# EXHIBIT B

Docusign Envelope ID: AD355146-24CA-4A83-B893-E953B2B9AB6C

## NON-DISCLOSURE, CONFIDENTIALITY, NON-COMPETITION AND NON-SOLICITATION AGREEMENT

This Non-Disclosure, Confidentiality, Non-Competition and Non-Solicitation Agreement ("Agreement"), dated this ___11/22/24_____, is entered into by and between UNITED GRANTS OF AMERICA LLC, a limited liability company organized and existing under and by virtue of the provisions of the General Law of Corporations of Puerto Rico (the "Company"), and ___Dan Ehrlich_____ , ___Account Executive_____ of the Company and resident of San Juan, Puerto Rico (the "Employee"). The Company, and the Employee may be each referred to as "Party", and collectively as "Parties".

### RECITALS:

**WHEREAS,** the Company, directly or through one or more of its Affiliates is engaged in the business of identifying, consulting and facilitating farmers for grants and programs for issued through the USDA and its various agencies on the Federal and State level and other related services in various locations in Puerto Rico and all 50 states of the United States (the "Business");

**WHEREAS,** the business relationships, Clients (defined below), products, services, techniques, goodwill and other aspects of the Business are maintained at great expense, are of great value to the Company and provide a substantial competitive advantage to the Company;

**WHEREAS,** during the employment relation with the Company, there may be disclosed to
Employee certain trade secrets, confidential and/or proprietary business information of or regarding the Company; and

**WHEREAS,** the Parties desire to enter into this Agreement to set forth certain restrictions on the ability of the Employee to engage in activities competitive with the Company and to disclose confidential information for a reasonable period of time.

**NOW, THEREFORE,** in consideration of Employee's employment or continued employment with the Company, Employee hereby agrees and acknowledges:

## AGREEMENTS:

1. **Definitions.** For the purposes of this Agreement, the following definitions shall apply:

(a) "Affiliates" means any other entity controlling, controlled by or under common control by the Company. As used in this definition, the term "control," including the correlative terms "controlling," "controlled by" and "under common control with," means the possession, directly or indirectly, of the power to direct or cause the direction of the management or policies of the Company, whether through ownership of voting securities, by contract or otherwise.

(b) "Agreement" means as set forth in the Preamble.

(c) "Business" means as set forth in the Recitals.

(d) "Competing Business" means any Person which business model, operations and/or business activities are in the same or similar line of business as the Business and/or that in any way is considered that it competes directly or indirectly with the Business.

(e) "Company" means as set forth in the Preamble.

(f) "Confidential Information" means all Technical and/or Business information including: financial information, investment performance results or rates of return of the Company or any of the Protected Parties; technical information or reports; trade secrets; proprietary information, unwritten knowledge, and "know-how;" operating instructions; training manuals; Client lists; Client buying records and habits; product/service sales records and documents and product/service development, marketing, and sales strategies; market surveys; marketing plans; profitability analyses; product/service cost; long-range plans; information related to pricing, competitive strategies, and new product/service development; personnel-related information, except as prohibited from non-disclosure by law; commercial contracts; and lists of suppliers; any information marked or treated as "confidential" or "privileged" by the Company; and any other trade secrets and/or confidential and/or proprietary business information of or regarding the Company (including information created or developed, in whole or in part, by Employee), which is not generally known about the Company or about its business.

Confidential Information includes not only the information itself but also all documents containing such information, and any and all such information is maintained in electronic or other form. For purposes of this Agreement, Confidential Information shall not include any information which Employee can establish was (i) publicly known or (ii) becomes publicly known and made generally available after disclosure to Employee by the Company, through means other than Employee's breach of his/her obligations under this Agreement. Without limiting the foregoing, the Employee agrees to keep confidential the existence of, and any information concerning, any dispute between the Employee and the Company, except as prohibited by law, or that the Employee may disclose information concerning such dispute to the court that is considering such dispute or to the Employee's legal counsel or representative provided that such counsel or representative agrees not to disclose any such information other than as necessary to the prosecution or defense of such dispute.

(g) "Clients" means all types of farmers, comprising individuals, corporations, or affiliated entities, within the twelve (12) months prior to the hiring date or the commencement of the Employee's services for the Company, and extending up to the date of termination of employment.

(h) "Non-competition Period" means the months after the date of termination of employment, as set forth below:

- **12 months:** Arizona, Connecticut, Illinois, Massachusetts, Nevada, New Hampshire, Ohio, Rhode Island, Utah, Vermont.
- **18 months:** Idaho, New Mexico, Oregon, Washington.
- **24 months:** Alabama, Arkansas, Delaware, Florida, Georgia, Kansas, Kentucky, Louisiana, Maryland, Minesota, Mississippi, Missouri, New Jersey, New York, North Carolina, South Dakota, Virginia, Wyoming, Wisconsin.
- **36 months:** Alaska, Colorado, Hawaii, Indiana, Iowa, Maine, Michigan, Montana, Nebraska, Pennsylvania, South Carolina, Tennessee, Texas, West Virginia.

(i) "Party" or "Parties" means as set forth in the Preamble.

(j) "Person" means any individual, partnership, association, Company, limited liability company, trust, unincorporated organization, or any other business entity or enterprise.

(k) "Employee" means as set forth in the Recitals.

(l) "Territory" means those political subdivisions within the Commonwealth of Puerto Rico, where the Company or its Affiliates have an office or other place of business as well as those political subdivisions within Commonwealth of Puerto Rico, where the Company's or its Affiliate's Clients are located at the hire date.

2. **Legitimate Interest.** The Company has a legitimate interest in protecting its competitiveness in the market in which it participates. This objective is adequately achieved by entering into this Agreement with the Employee. The Employee recognizes that he/she has had and/or will have direct contact with and/or access to the Company's operation and its intricacies, its Clients, services, and know-how; information, material, documents, plans, processes, offers, pricing, developments, equipment, products, training, techniques, creations, strategies, procedures, proposals, sensitive data, or other information, material, or type of knowledge. The Employee acknowledges that, considering the nature of the Business: (a) the Non-competition Period, scope, and Territory of the non-competition and non-solicitation restrictions set forth in this Agreement are reasonable and necessary to prevent the use of such information and/or to prevent actual competition between the Employee and the Company, should the Employee choose to work for, become a shareholder, member, partner, Employee, or provide services, directly or indirectly, of the nature of the Company's Business during or after the termination of this Agreement; (b) the Employee has been given an opportunity and reasonable time to study and consider the terms and conditions of this Agreement; and (c) the Employee has not been forced, coerced, influenced, or obliged by the Company, an Affiliate, or any other third party to sign this Agreement.

3. **Non-competition.** The Employee hereby expressly acknowledges that his know-How, resources, business acumen, and skills are readily adaptable to different businesses other than the Business and to different products and is not unduly limited by the extent of the Territory so that the enforcement of any of the covenants herein contained against would not prevent him from effecting a satisfactory utilization of his skills and a satisfactory realization of his potential. Therefore, Employee covenants and agrees that he shall not, in any capacity, during the Non-competition Period, either directly or indirectly, partially or wholly, within the Territory: (i) engage, advise, provide, or perform for the benefit of a Competing Business equal and/or similar responsibilities as those he performed in benefit of the Company and/or its Affiliates, its business and management; (ii) manage, operate, supervise, administer, organize, engage in, conduct, oversee, direct, run, aid, support, assist, or in any way participate in a Competing Business, either on his own behalf or on behalf of any other Person, whether as an employee, agent, consultant, independent contractor, or otherwise; and/or (iii) have a financial interest in, own, control, join in, or be in any way connected with or affiliated with

Docusign Envelope ID: AD355146-24CA-4A83-B893-E953B2B9AB6C

any Competing Business, whether as a shareholder, investor, member, owner, partner, proprietor, director, officer, administrator, manager, lender, consultant, or otherwise.

4.  **Non-solicitation of Employees.** The Employee covenants and agrees that he, nor his respective successors and assigns, if any, shall, during the Non-competition Period, directly or indirectly, solicit, divert or recruit any employee of the Company or any of its Affiliates employed in the Business, to (i) solicit, divert or recruit any employee of the Company or any of its Affiliates, (ii) incite any employee of the Company or any of its Affiliates to leave such employment, whether or not such employment is pursuant to a written contract with the Company or any of its Affiliates or at will, (iii) interfere in any way with the relationship between the Company or any of its Affiliates and any employee of the Company or any of its Affiliates, and/or (iv) assist any Competing Business in recruiting those employees. Under no circumstances the prohibition herein shall be interpreted as otherwise allowing the Employee's illegal interference with the Company's contractual relationship with third parties.

5.  **Non-solicitation of Clients.** Employee covenants and agrees that he shall not during the Non-competition Period, either directly or indirectly, on his own behalf or on behalf of any other Person, (i) contact, offer, service, solicit, intervene, or call upon, or otherwise attempt to divert any Client for the purpose of providing services or products that are competitive to the Business, and/or (ii) induce or attempt to induce a Client to cease doing business with the Company or its Affiliates, or in any way interfere with the relationship between any Client of the Company or its Affiliates.

6.  **Absence of Other Non-Compete Agreements.** Other than this Agreement, the Employee guarantees that there is no existing non-competition agreement or contract with any Person or entity, which is effective and that limits or prohibits Employee from executing this Agreement. If such a written and valid non-compete agreement or contract is determined to exist by a forum of competent jurisdiction, the Employee hereby discharges and releases the Company or any of its Affiliates and agrees to indemnify and hold the Company, its Affiliates, directors, managers, and officers, harmless from any liability or claim, whatsoever, to which the Company or any of its Affiliates may be subjected, with regard to the existence of any such non-competition agreement.

Docusign Envelope ID: AD355146-24CA-4A83-B893-E953B2B9AB6C

7.  **<u>Notification of New Contract.</u>** If during the Non-Competition Period the Employee enters into any contract or relationship with a Competing Business, the Employee must within five (5) days give written notice to the Company and will provide to Company with the information it needs about the Employee's new contract or relationship to determine whether such contract or relationship would likely lead to a violation of this Agreement (except that Employee need not provide any information that would include the Person's or Competing Business's trade secrets). In such event, the Employee hereby grants consent to notification by the Company to its new contracting counter party or relationship about Employee's obligations under this Agreement.

8.  **<u>Non-Disclosure of Confidential Information.</u>** Employee agrees, without any time limitation, including during and after the term of this Agreement and his/her employment with the Company, that the Employee shall not disclose, use, or permit access, to any unauthorized person or entity, including within the Company, or use for the Employee's own purposes or gain, or that of any friend, relative or other third party, any Confidential Information without the prior written consent of the Company, unless and to the extent that the aforementioned matters (a) become generally known to and available for use by the public other than as a result of the Employee's acts or omissions in violation of this Agreement or (b) were within the Employee's possession prior to its being obtained by the Employee in the course of the Employee's employment with the Company; provided, however, that if the Employee receives a request to disclose Confidential Information pursuant to a deposition, request for information or documents in legal proceedings, subpoena civil investigative demand, governmental or regulatory process or similar process, (a) the Employee shall promptly notify the Company in writing, and consult with and assist the Company in seeking a protective order or request for other appropriate remedy; (b) in the event that such protective order or remedy is not obtained, or if the Company waives compliance with the terms hereof, the Employee shall disclose only that portion of the Confidential Information which, in the written opinion of the Employee's legal counsel, is legally required to be disclosed and shall exercise reasonable best efforts to assure that confidential treatment shall be accorded to such Confidential Information by the receiving person or entity; and (c) the Company shall be given an opportunity to review the Confidential Information prior to disclosure.

Docusign Envelope ID: AD355146-24CA-4A83-B893-E953B2B9AB6C

9. **Employee Obligations:** Employee agrees that upon the termination of their employment from Company:

a. Employee shall return to Company all documents and property of Company, even if not marked "confidential" or "proprietary," including but not necessarily limited to: drawings, blueprints, reports, manuals, correspondence, Client and/or investor lists, computer programs, and all other materials and all copies thereof relating in any way to Company's business, or in any way obtained by me during the course of employment. I further agree that I shall not retain copies. notes or abstracts of the foregoing.

b. The Company may notify any future or prospective employer or third party of the existence of this Agreement. The Company shall be entitled to injunctive relief for any or threatened breach of this Agreement, in addition to all other available remedies, including the recovery of monetary damages.

10. **No Breach of Others' Confidential Information.** The Employee further agrees that the Employee will not improperly use or disclose any confidential or proprietary information or trade secrets, if any, of any former employers or any other person or entity to whom Employee has an obligation of confidentiality, and will not bring onto the premises of the Company or any of the Parties, any unpublished documents or any property belonging to any former employer or any other person or entity to whom Employee has an obligation of confidentiality unless consented to in writing by the former employer or other person or entity.

11. **Severability.** Each subsection hereof is severable, and if any portion shall be reformed or declared to be invalid or unenforceable, such reformation or declaration shall not affect the enforceability or validity of any other portions of this Agreement. Each provision of this Agreement shall be enforceable by the Company or any successor thereof against the Employee notwithstanding any claim or cause of action asserted by the Employee against the Company or any successor thereof. The existence of any claim, demand, action, or cause of action of the Employee against the Company shall not constitute a defense to the enforcement by the Company of any of the covenants contained herein and shall not constitute in any way or by any means a waiver, release or discharge of the mutual covenants and agreements of the parties herein contained.

12. **Irreparable Harm/Injunctive Relief.** The Parties expressly recognize that the subject matter of this Agreement is unique, and that any breach of Employee's obligations under this Agreement is likely to result in irreparable injury to the Company, its Affiliates and/or its successors and assigns which cannot be adequately or solely measured or compensated by the rules of law and legal remedies. Therefore, in the event of a breach of this Agreement by the Employee, the Company and/or its successors or assigns shall be entitled to obtain specific performance of this Agreement through injunctive relief and such ancillary remedies of an equitable nature as a court may deem appropriate. Such equitable relief shall be in addition to, and the availability of such equitable relief shall not serve to preclude any legal remedies which might be available to the Company and/or its successors.

13. **Governing Law.** This Agreement is governed by and subject to the laws of the States where it will be enforced (without giving effect to its conflict of law provisions) irrespective of the fact that a party hereto may be a resident of another state or jurisdiction.

14. **Modification.** This Agreement may not be changed or modified except in a writing specifically referring to this Agreement and signed by all of the Parties hereto. No attempted waiver of any provision hereof shall be binding on the other Parties unless reduced to writing and signed by the waiving Party. Unless specifically provided otherwise herein or agreed to by the parties in writing, no modification, waiver, termination, rescission, discharge or cancellation of this Agreement shall affect the right of the Parties hereto to enforce any claim, whether or not liquidated, which accrued prior to the date of such modification, waiver, termination, rescission, discharge, or cancellation of this Agreement, and no waiver of any provision or of any default under this Agreement shall affect the right of any Party to enforce such provision or to exercise any right or remedy in the event of any other default, whether or not similar.

15. **Time of Essence.** The Parties agree that time is of the essence with respect to each provision of this Agreement.

16. **Headings.** The headings in this Agreement are intended solely for convenience of reference and shall be given no effect in the construction or interpretation of this Agreement.

17. **Notices.** Any notice to be given hereunder shall be deemed given and sufficient if in writing and delivered personally or sent for next day delivery by a recognized overnight delivery service (e.g. Federal Express) which guarantees next day delivery ("Overnight Delivery") or by facsimile with confirmation of receipt (with a copy sent by registered or certified mail, return receipt requested, postage prepaid or Overnight Delivery) or electronic mail to the recipient with telephonic confirmation by the sending Party. Such notices, demands and other communications will be sent to the address indicated below or such other address or to the attention of such other person as the recipient Party shall have specified after signing this Agreement by written notice to the sending Party:

If to Employee:          [Name] Dan Ehrlich _____

                         [Address] 350 Shore Rd Glenwood Landing New York 11547 _____

                         [Email] powerhouse151@yahoo.com _____

If to Company:           **UNITED GRANTS OF AMERICA LLC**
                         Attn. Elias Tacher
                         1250 Ave. Ponce de Leon
                         STE 301 PMB 2012
                         San Juan, PR 00907
                         info@unitedgrantsofamerica.com

or such address as shall be furnished by such notice to the other Parties hereto.

18. **Expenses of Enforcement.** The non-prevailing Party shall be liable to, and will pay the prevailing Party, for all costs and expenses, including, but not limited to, reasonable attorneys' fees incurred by the prevailing Party in the enforcement, defense or interpretation in any respect of any of its rights under this Agreement, whether in litigation or otherwise.

19. **Protected Employee Activity.** Nothing in this Agreement is intended to interfere with or have a chilling effect on any state or federal protected rights of the Employee. Should the Employee have any question regarding the application of this Agreement to the Confidential Information of the Company or any of the Parties, the Employee should contact the Company for compliance.

Docusign Envelope ID: AD255146-24CA-4A83-B893-E953B2B9AB6C

20. **Waiver.** No waiver hereunder shall be valid and binding unless set forth in writing and duly executed by the Party against whom enforcement of the waiver is sought. The failure of any Party at any time or times to require performance of any provision of this Agreement will in no manner affect the right to enforce the same. The waiver by any Party of any breach of any provision of this Agreement will not be construed to be a waiver by any such Party of any succeeding breach of that provision or a waiver by such Party of any breach of any other provision.

21. **Survival.** This Agreement shall be effective on the date of signature. The nondisclosure provisions of this Agreement shall survive any termination, cancellation or expiration of this Agreement and Employee's duty to hold Confidential Information in confidence shall remain in effect until the Confidential Information no longer qualifies as a trade secret or until Company sends the Employee written notice releasing Employee from this Agreement, whichever occurs first. Further the obligation not to disclose Confidential Information shall not be affected by bankruptcy, assignment, attachment, or seizure procedures, whether initiated by or against Employee.

22. **Counterparts.** This Agreement may be executed, manually or by facsimile signature or by another electronic means, including PDF, in two or more counterparts, any one of which need not contain the signatures of more than one party, but all such counterparts taken together shall constitute one and the same Agreement.

Docusign Envelope ID: AD255146-24CA-4A83-B893-E953B2B9AB6C

**IN WITNESS WHEREOF,** the parties hereto, intending to be legally bound, have executed and delivered this Agreement as of the day and year first above written.

**UNITED GRANTS OF AMERICA LLC**

Signed by:

*Elias Tacher*

15D542F77ACC4EE...

Name: Elias Tacher

Title: Founder

**EMPLOYEE**

DocuSigned by:

*Dan Ehrlich*

5ACB8D4F0D6C470...

Name: Dan Ehrlich

Position: Account executive